THOMAS F. PENNY, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*False imprisonment — a railroad company is not bound by an unauthorized arrest, made in its station, of one not a passenger — what acts of a railroad " detective," towards a person already arrested, are not within the scope of his employment.*

In an action brought to recover damages for an alleged illegal arrest and imprisonment of the plaintiff at a station of the defendant's railroad, there was no evidence that the plaintiff had purchased, or was in possession of, a railroad ticket entitling him to ride on the defendant's road, or that he was entitled to

ride thereon, or that he stood in the relation of a passenger to the defendant, and it appeared that the persons who made the arrest and who guarded plaintiff's place of imprisonment and forcibly detained him were not employees of the defendant, and it did not appear that any persons acting for the defendant were directed to arrest or detain the plaintiff, although a person employed by the defendant as a detective, and subject to directions by its law department, entered the place where the plaintiff was confined after his arrest, searched his clothing, committed some indignities upon his person, and applied to him abusive language, without, so far as appears, any direction having been given the detective to arrest the plaintiff or to do the acts which he did after the plaintiff was arrested.

*Held*, that there is no such settled significance to the term "detective" as of necessity imports authority to arrest criminals or persons charged or suspected of committing criminal acts, and that, in order to establish such authority, it is essential that evidence of such conditions as warrant the inference of its existence shall be given;

That there was not sufficient evidence in this case to warrant a submission to the jury of the question whether the detective did or did not act within the scope of his authority.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Orange on the 15th day of April, 1898, upon the verdict of a jury for $500, and also from an order entered in said clerk's office on the 18th day of April, 1898, denying the defendant's motion for a new trial made upon the minutes.

*Charles F. Brown*, for the appellant.

*Graham Witschief*, for the respondent.

HATCH, J.:

This is an action brought to recover damages for an alleged illegal arrest and imprisonment of the person of the plaintiff. The complaint avers that "the plaintiff having purchased a ticket for Newburgh, N. Y., and being about to board a train of the West Shore Railroad Company bound for that place, was seized by an employee of the defendant, who maliciously and without probable cause, and without authority of law, * * * locked him up in a small room, used by defendant for a baggage room, in the railroad station at Highland, N. Y. (the station at which the plaintiff attempted to board the train), and then and there searched the clothes and per-

son of plaintiff, and subjected him to other indignities against his protests, and there detained the said plaintiff as a prisoner and restrained him of his liberty against his will for the space of an hour and one-half." Upon the trial there was no evidence given showing that the plaintiff purchased a ticket of the defendant entitling him to ride to Newburgh, or that he was in possession of any ticket which entitled him to ride upon defendant's train to Newburgh, or to any other place upon defendant's road, nor did the plaintiff show any legal right to board the train he was attempting to board when the arrest was made. He did not, therefore, stand in the relation of a passenger to the defendant, and may not, in consequence, invoke the rule which obtains when such relation is established. The averments of the complaint in this respect stand wholly unsupported by the proof. It also appears by the evidence that the person who made the arrest, and the one who guarded plaintiff's place of imprisonment and forcibly detained him therein, were not employees of the defendant, and had no connection whatever with it. Nor did it appear that these persons were directed to arrest and detain the plaintiff by any person connected with the defendant, or that they were acting in its behalf. There was, therefore, no basis upon which liability of the defendant could be predicated for acts committed by these persons. It did appear by the proof that one Morehead entered the place where the plaintiff was confined, after his arrest, searched his clothing, committed some indignities upon his person and applied to him abusive language. The evidence established that Morehead was employed by the defendant as a detective and was subject to directions by its law department. No proof was given showing what duties were devolved upon Morehead, what authority he possessed or what he was directed to do, except as the court would be authorized to infer from the term "detective." The case is barren of evidence showing any direction by Morehead to arrest the plaintiff, and it is also barren of proof showing any affirmative direction by the defendant to Morehead either to compass the arrest of the plaintiff or to do the acts which he did after the plaintiff was arrested.

The general rule is that the master is responsible for the acts of a servant where he has granted authority or imposed a duty to act in respect of the business in which the servant is engaged when the

wrong was committed, and the act complained of was pursuant to the course of employment in which the servant was engaged or had authority to do. (*Cohen* v. *D. D., E. B. & B. R. R. Co.*, 69 N. Y. 170.) It matters not that the servant's acts are reckless and that thereby unnecessary injury is inflicted, or that he abuses his authority or departs from his instructions, or through infirmity of temper adds slander to his other wrongdoing — all are unavailing to shield the master so long as the things which are done are done in the prosecution of the business of the master. (*Palmeri* v. *Manhattan R. Co.*, 133 N. Y. 261.) And this is the rule even though such acts be not only negligent, but wanton and willful. (*Burns* v. *Glens Falls R. R. Co.*, 4 App. Div. 426.) Unless acting within the scope of authority the master is not responsible for the servant's acts. (*Meehan* v. *Morewood*, 52 Hun, 566; affd., 126 N. Y. 667; *Mulligan* v. *N. Y. & Rockaway Beach R. Co.*, 129 id. 506.) Those cases sufficiently illustrate the distinction and the subject needs no further elaboration. The negligent or willful misconduct of the servant must not only be shown, but equally so that the act was within the scope of employment before liability of the master is established. The rule, like many others, is clear; the difficulty lies in applying it to particular facts. As applied to the present proof we think liability was not established. There is no such settled significance attached to the term "detective" as of necessity imports authority to arrest criminals or persons charged or suspected of committing criminal acts. Where the business of the master requires the performance of such acts, and the employment of the detective is in connection therewith, or if there be expectation that he may be required to make arrests in the discharge of the duties intrusted to him, liability may attach. But it is essential that evidence of such conditions be given sufficient to warrant the inference. In some cases slight proof would be required, depending in large measure upon the business prosecuted by the master, from which a jury might find the act to be within the scope of employment. But it is quite well known that the term "detective" is applied to persons in the employ of various individuals and corporations whose authority is limited to the collection of evidence and the performance of other acts having sole reference to civil litigation. Some are employed in the surveillance of employees suspected of bad habits and practices which unfit them for retention

in places of trust and confidence.    There exists a wide scope of employment of persons called detectives which scarcely has connection with crimes or criminals, and in which no arrest of persons is authorized or contemplated.    Under such circumstances there would exist no authority for holding the master responsible for the arrest, detention and search of an individual.    Such case would fall within the determination made in *Mali* v. *Lord* (39 N. Y. 381) where the master was held exempt.

Upon the proof in this case we are of opinion that the acts of Morehead were not made to appear as having been committed within the scope of his authority.    From all that appears it is quite as consistent with the conclusion that he acted from personal motives and for his own purposes, as that he acted in the prosecution of any matter committed to his care by the defendant.    If there were doubt upon this point it would present a question for the jury. (*Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129.)    Upon the evidence, however, there was not sufficient to warrant a submission of the question to the jury, and the motion for a nonsuit should have been granted.

There was also a fatal error committed in the charge of the court. The learned judge charged that the arrest was made by the servants of the defendant without any justification ; that the defendant was liable, and the only question was one of damages.    To this charge exception was taken.    The learned court labored under a clear misapprehension of the testimony.    It was undisputed that the arrest was made by a person having no connection whatever with the defendant.

It follows that the judgment should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment and order reversed and new trial granted, costs to abide the event.